IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MICHAEL WESLEY SIMPSON, )<br><br>    Plaintiff, )<br><br>v. )<br><br>SHELBY COUNTY, TENNESSEE<br>OFFICE OF CONSTRUCTION<br>CODE ENFORCEMENT, and<br>FELICIA CAMPBELL, )<br><br>    Defendants. ) | No. 19-cv-2625-TMP |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO AMEND

Before the court are defendants Shelby County, Tennessee, Office of Construction Code Enforcement and Felicia Campbell's Motion to Dismiss or in the Alternative for Summary Judgment, filed on October 30, 2020, and *pro se* plaintiff Michael Wesley Simpson's Motion for Leave to Amend and Supplement Complaint, filed October 26, 2020.[1] (ECF Nos. 28-29.) Simpson filed a response to the defendants' motion on December 1, 2020. (ECF No. 31.) Defendants filed a response to Simpson's motion on November 3, 2020, as well

_____

[1]On February 21, 2020, the parties consented to have a United States magistrate judge conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings. (ECF No. 17.)

as a reply in support of their motion on December 15, 2020. (ECF Nos. 30, 32.)

## I.   BACKGROUND

*Pro se* plaintiff Michael Wesley Simpson's hobby is to collect and refurbish old military vehicles. (ECF No. 29-5 at 12.) Simpson's complaint is centered around two alleged constitutional violations that bookend a legal battle over whether his hobby is in violation of local zoning ordinances. (ECF No. 1 at 4.) Defendant Felicia Campbell, a Sign & Zoning Senior Inspector for defendant Shelby County, Tennessee, Office of Construction Code Enforcement ("Code Enforcement"), first visited Simpson's property on November 11, 2016. (ECF No. 29-3 at 2, 4.) On inspection of the property, Campbell observed what she described as "a heavy military-style truck, a heavy trailer, and a large, heavy, metal box" parked in his yard and driveway. (ECF No. 29-3 at 4.) Because storing heavy trucks and trailers is a violation of Shelby County municipal ordinances, Campbell warned Simpson that he needed to remove the vehicles or else risk a civil citation.[2] (ECF No. 29-3 at 4.)

---

[2]See Memphis and Shelby County Unified Development Code ("UDC") § 2.7.10(B) ("The parking of trucks, heavy equipment or tractor trailers shall not be allowed on any lot or on any street segment wholly or partially located within a residential or open zoning district.").

A little over a week later, Campbell returned to the property and saw that Simpson had not taken any steps towards complying with the ordinance. (ECF No. 29-3 at 4-5.) When the vehicles were still on his property on November 30, 2016, Campbell issued him a citation. (ECF No. 29-3 at 5.) Because he was not home at the time, Campbell followed standard Code Enforcement procedure and taped the citation to his front door. (ECF No. 29-3 at 5.) Later, on December 5, 2016, Campbell, accompanied by two other code enforcement employees, again returned to the property, this time to take photographs of the vehicles on his property. (ECF No. 1 at 4.) In order to take the photographs, Campbell walked down the driveway towards the back of the house. (ECF No. 29-5 at 17-18.) Simpson knew that Campbell and others were present on his property because he heard voices coming from the driveway side of his house, though they never entered his backyard. (ECF No. 29-5 at 18.) It is this occasion that Simpson asserts was a violation of his Fourth Amendment rights, as Campbell did not have his consent to enter the property or a warrant to search the premises. (ECF No. 1 at 4.)

Campbell would visit the property to inspect for compliance and take pictures on several more occasions in 2017 and 2019, though Simpson's complaint focuses on the December 2016 incident. (ECF No. 29-3 at 5-6.) On each visit, Campbell stood on Simpson's driveway or his porch, except for one occasion where she stood on

a strip of gravel immediately adjacent to the driveway to conduct her investigation. (ECF No. 29-3 at 7.) The only time that she physically touched the house was when she knocked on the door to no avail and resorted to taping the citation to his door. (ECF No. 29-3 at 7.)

After receiving the citation, Simpson appeared before the Shelby County Environmental Court in early 2017. (ECF No. 29-3 at 6.) On February 13, 2017, the Environmental Court found that he had violated the zoning ordinance and ordered him to remove the vehicles from his property no later than April 1, 2017. (ECF No. 25-1 at 7.) Simpson appealed the order to the Shelby County Circuit Court. (ECF No. 29-4 at 2.) On January 6, 2019, Campbell again entered Simpson's property to conduct an inspection. (ECF No. 29-3 at 6.) On that occasion, Campbell was accompanied by two other code enforcement inspectors. (ECF No. 29-3 at 6.) The officers observed that Simpson still had the vehicles on his property and that it appeared as if he had begun doing commercial repairs, which is itself a separate violation of the UDC. (ECF No. 29-3 at 6.) Though Campbell and the other inspectors took pictures while standing in the driveway and the adjacent gravel strip, the trucks could be seen from the main road. (ECF Nos. 29-3 at 12; 29-5 at 19-20.) Campbell issued Simpson a second citation, this time for "[f]ailure to comply with court orders. Improper outdoor storage of military trucks and heavy equipment. [And a]uto repairs in RS-

Zone." (ECF No. 29-3, at 11.) Because litigation for the first court order was ongoing and being handled by the Circuit Court, the Environmental Court dismissed the second citation for lack of jurisdiction.[3] (ECF No. 29-3 at 6.) According to Simpson, Campbell issued this second citation in an attempt to harass him in violation of his due process rights. (ECF No. 1 at 4.)

Regarding the first citation, on October 8, 2019, the Circuit Court entered an Order of Judgment for Memphis/Shelby County, Assessing Fine and Costs and Requiring Removal of Heavy Trucks, Trailers and Equipment from 7198 Polder Drive. (ECF No. 29-4 at 2.) On November 7, 2019, Simpson filed a notice of appeal to the Tennessee Court of Appeals. (ECF No. 29-4 at 3.) His appeal is still pending before the Court of Appeals. Tennessee v. Michael Simpson, W2019-01981-COA-R3-CV (Tenn. Ct. App. filed Nov. 7, 2019).

## II.  ANALYSIS

### A.  Standard of Review

As a preliminary matter, the undersigned will construe the defendants' motion as one for summary judgment. Under Federal Rule of Civil Procedure 12(d), if a party presents matters outside of the pleadings, "the motion must be treated as one for summary

---

[3]It is unclear from the record on what date the Environmental Court dismissed the second citation, but Simpson's complaint states that it was about six months after the citation was issued. (ECF No. 1 at 4.)

judgment under Rule 56." Before doing so, the Rule requires that all parties be given a reasonable opportunity to present materials that are germane to the motion as it is construed. See <u>Wysocki v. Int'l Bus. Mach. Corp.</u>, 607 F.3d 1102, 1105 (6th Cir. 2010) (holding that it was proper for the district court to convert a motion to dismiss to a motion for summary judgment where the initial motion noted that it contained materials outside the pleadings and the plaintiff's response "clearly indicated that [plaintiff] understood that the court might grant summary judgment"). Here, the defendants styled their motion as a motion to dismiss or, in the alternative, as a motion for summary judgment. Attached to the motion were affidavits and exhibits that were not a part of the pleadings. In Simpson's response, he also included exhibits that were not contained in the pleadings and noted that it was a response to a motion for summary judgment. As such, the court finds that both parties have had a reasonable opportunity to present materials in support and in defense of this motion. Thus, the court will consider the arguments contained in the defendants' motion under the summary judgment standard.

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When assessing whether to grant summary judgment, a judge "may not 'make credibility

determinations or weigh the evidence,' because those are 'jury functions.'" Jordan v. Kohl's Dep't Stores, Inc., 490 F. App'x 738, 741 (6th Cir. 2012) (citation omitted) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Instead, the judge must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Block v. Meharry Med. Coll., 723 F. App'x 273, 277 (6th Cir. 2018) (quoting Anderson, 477 U.S. at 251-52). "In resolving a summary judgment motion, th[e] court must view the evidence in the light most favorable to [the nonmovant]." Huckaby v. Priest, 636 F.3d 211, 216 (6th Cir. 2011) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**B.   Section 1983 Claims**

Simpson's claims against both defendants are couched in terms of 42 U.S.C. § 1983. Section 1983 allows actions against any person who, acting under color of state law, subjects "any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights[ or] privileges . . . secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. It does not create substantive rights but instead "provides remedies for deprivations of rights established elsewhere." Flint v. Ky. Dep't of Corr., 270 F.3d 340, 351 (6th Cir. 2001) (citing Okla. City v. Tuttle, 471 U.S. 808 (1985)). There are two elements to a

claim under § 1983: "(1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law." Conexx Staffing Servs. v. PrideStaff, No. 2:17-cv-02350-SHM-cgc, 2017 WL 9477760, at *2 (W.D. Tenn. Nov. 3, 2017) (citing Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003)).

    1.   Statute of Limitations

Simpson's Fourth Amendment claims related to the December 5, 2016, incident are barred by the statute of limitations. "The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." Howell v. Farris, 655 F. App'x 349, 351 (6th Cir. 2016) (internal citations and quotations omitted). In Tennessee, the applicable statute of limitations runs for one year. T.C.A. § 28-3-104(a). "Although the applicable time period is borrowed from state law, the date on which the statute of limitations begins to run . . . is a question of federal law." Howell, 655 F. App'x at 351. "Ordinarily, the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." Id.

Simpson's complaint alleges that, on December 5, 2016, defendants violated his Fourth Amendment rights when Campbell entered his curtilage to take photographs of his personal property.

- 8 -

(ECF No. 1 at 4.) Simpson testified at his deposition that he was at his house on December 5, 2016, when Campbell and others arrived to take photographs and that he heard and saw them standing on his driveway. (ECF No. 29-5 at 17-18.) As such, Simpson had one year from that date to raise any corresponding § 1983 claims. See Howell, 655 F. App'x at 351. Simpson did not file this complaint until September 17, 2019. Thus, Simpson is time-barred from pursuing his § 1983 claims against Campbell and Code Enforcement that stem from Campbell's entry onto his property on December 5, 2016.

### 2.   Fourth Amendment Claim Against Campbell

Even if the court were to consider the merits of Simpson's Fourth Amendment claim from 2016, the court would still find that it fails. Simpson argues that Campbell violated his Fourth Amendment rights by entering his property to take photographs. The Fourth Amendment provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. It is well-settled that a "naked-eye" observation of a home's exterior from a public street or from an open field is not a Fourth Amendment search. Widgren v. Maple Grove Twp., 429 F.3d 575, 581 (6th Cir. 2005). The Fourth Amendment, however, may be implicated when a defendant enters onto the curtilage of the home. Id. at 582. In determining whether a search

violates the Fourth Amendment, the court must consider both the methods used – such as if the defendant observed what could have been seen by a passerby or if the defendant resorted to either "[e]xtraordinary measures" or "dirty business" – as well as the purpose of the investigation. Id. at 583 (quoting Olmstead v. United States, 277 U.S. 438, 470 (1928) (Holmes, J., dissenting); citing James v. United States, 418 F.2d 1150, 1151 n.1 (D.C. Cir. 1969) and Wayne R. LaFave, 1 Search and Seizure: A Treatise on the Fourth Amendment § 2.3(g) (4th ed. 2004)). "A criminal investigation is generally more intrusive than an administrative or regulatory investigation." Id. As such, the Sixth Circuit has held that a city employee "does not conduct a Fourth Amendment search by entering the curtilage for the [] purpose of naked-eye observations of the house's plainly visible exterior attributes . . . all without touching, entering or looking into the house" during an "administrative inspection." Id. at 585-86.

Simpson's Fourth Amendment allegation against Campbell is that she walked down his driveway "to take photographs of personal property items located on my property at the rear of my driveway." (ECF No. 1 at 4.) He argues that the machinery he stores in his backyard and driveway is protected by the Fourth Amendment because it is on his private property and Campbell must have had to enter his private property to conduct the inspection. Even assuming that Campbell entered the curtilage of his home, this is insufficient

to support a claim that Campbell violated his Fourth Amendment rights. See, e.g., Widgren, 429 F.3d at 585 (holding that a tax appraiser did not violate the Fourth Amendment despite entering the curtilage of the plaintiff's home where he "did not touch, enter, or look into the house [nor] did he stray beyond areas reasonably necessary to aid his inspection."); Field v. City of Hartford, No. 3:18-cv-01803 (JAM), 2019 WL 4279011, at *8 (D. Conn. Sept. 9, 2019) (holding that there was no Fourth Amendment violation where a police officer trespassed onto the plaintiff's property and posted a zoning citation on the plaintiff's front door); Conrad v. City of Berea, 243 F. Supp. 3d 896, 905-07 (N.D. Ohio 2017) (holding that a building inspector did not commit a Fourth Amendment violation where he trespassed onto property to take pictures during "an administrative assessment"). In her affidavit, Campbell stated that she remained on the driveway, sidewalk, and porch during every visit to his house (except for one occasion in January 2019 where she stood immediately adjacent to the driveway) and that she only touched the house to knock on the door and post the citation. (ECF No. 29-3 at 7.) Simpson even admits as much in his deposition, where he testified that he saw code enforcement inspectors taking pictures from his driveway and from the gravel section adjacent to the driveway, but never in his backyard. (ECF No. 29-5 at 17-18.) He testified further that his primary contention for a Fourth Amendment violation is that the

defendants entered onto the curtilage of his home by standing on and around his driveway. (ECF No. 29-5 at 22.) This does not amount to a Fourth Amendment violation.

###### 3.   Fourteenth Amendment Claims Against Campbell

Additionally, Simpson argues that his due process rights were violated when Campbell issued him a citation for failing to comply with court orders while his earlier citation was still pending on appeal.[4] The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. There are two forms of due process rights: procedural and substantive. Midkiff v. Adams Cty. Reg'l. Water Dist., 409 F.3d 758, 762 (6th Cir. 2005). "Procedural due process is traditionally viewed as the requirement that the government provide a fair procedure when depriving someone of life, liberty, or property; substantive due process protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012)

---

[4]In his response to the motion for summary judgment, Simpson refers to his due process rights as being under the Fifth Amendment. Because the Fifth Amendment applies to the federal government and the Fourteenth Amendment applies to state governments, the court will construe his claims as being brought under the Fourteenth Amendment. See Dusenberry v. United States, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").

(quoting <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 125 (1992) (internal quotation marks omitted)).

A procedural due process claim involves a two-part analysis: "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened notions of due process." <u>Midkiff</u>, 409 F.3d at 762–63; <u>see also Thomas v. Cohen</u>, 304 F.3d 563, 576 (6th Cir. 2002). "Substantive due process claims, in comparison, serve[] as a vehicle to limit various aspects of potentially oppressive government action." <u>Handy-Clay v. City of Memphis</u>, 695 F.3d 531, 546–47 (6th Cir. 2012) (quoting <u>Howard v. Grinage</u>, 82 F.3d 1343, 1349 (6th Cir. 1996) (internal quotation marks omitted)). "They often fall into one of two categories — claims that an individual has been deprived of a particular constitutional guarantee, or claims that the government has acted in a way that 'shock[s] the conscience.'" <u>Id.</u> at 547 (quoting <u>Valot v. Se. Local Sch. Dist. Bd. of Educ.</u>, 107 F.3d 1220, 1228 (6th Cir. 1997) (citations omitted)). "The conscience-shocking limit on substantive due process claims serves to keep the doctrine from expanding to cover administrative incompetence or irresponsibility." <u>Brown v. Detroit Pub. Sch. Cmty. Dist.</u>, 763 F. App'x. 497, 504 (6th Cir. 2019) (citing <u>Cty. of Sacramento v. Lewis</u>, 523 U.S. 833, 848 (1998)). "Where government action does

- 13 -

not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest." Id. (quoting Valot, 107 F.3d at 1228 (internal quotation marks omitted)).

Here, viewing the evidence in the light most favorable to Simpson, the facts do not establish that Campbell violated either Simpson's procedural or substantive due process rights. Regarding substantive due process, Campbell did not deprive Simpson of any constitutional guarantee or engage in any conduct that would even come close to shocking the conscience. See Handy-Clay, 695 F.3d at 546-47 (stating that "'only the most egregious official conduct,' conduct that is 'so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency'" should be construed as shocking the conscience) (quoting Lewis, 523 U.S. at 846-47 and Breithaupt v. Abram, 352 U.S. 432, 435 (1957)). Campbell merely posted a citation on Simpson's door for failing to comply with the Environmental Court's order to remove all of the military vehicles from his property and for continuing to violate local zoning ordinances. The citation was ultimately dismissed for lack of jurisdiction because of the ongoing litigation for the first citation. That he was required to reappear in court and defend against the second citation does not establish a substantive due process violation. See DePoutot v. Raffaelly, 424 F.3d 112, 119

- 14 -

(6th Cir. 2005) ("Mere violations of state law, even violations resulting from bad faith, do not necessarily amount to unconstitutional deprivations of substantive due process."). Moreover, it was reasonable for Campbell to believe that she was justified in issuing him a second citation for continuing to have military vehicles on his property. (ECF No. 29-3 at 11); see Memphis and Shelby County UDC § 11.1 ("Each day's continuance of a violation shall be considered a separate offense."). Further, as defendants point out, maintaining community aesthetics and enforcing zoning ordinances is a legitimate government interest. Conrad, 243 F. Supp. 3d at 903 (citing Franchise Developers, Inc. v. City of Cincinnati, 505 N.E.2d 966, 967 (1987)).

Regarding procedural due process, "a § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' and that available state remedies would not adequately compensate for the loss." Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir. 1991). To do so, a plaintiff must prove that "(1) she has a property interest protected by the Due Process Clause; (2) she was deprived of this property interest; and (3) the state did not afford her adequate pre-deprivation procedural rights." Muhammad v. Azar, No. 18-cv-

2857-MSN-tmp, 2019 WL 4228915, at *7 (W.D. Tenn. Aug. 19, 2019)
(citing <u>Chandler v. Vill. of Chagrin Falls</u>, 296 F. App'x 463, 469
(6th Cir. 2008)).

Based on the record before the court, Simpson's procedural
due process claim fails because he was given an adequate
opportunity to defend against the second citation and because his
right to appeal the first citation was not abridged. <u>See</u> <u>id.</u>
Simpson's complaint alleges that his due process rights were
violated because the second citation interfered with his right to
appeal the first citation and amounted to harassment. (ECF No. 1
at 4.) In his reply to the motion for summary judgment motion, he
argues that his due process rights were violated because the
citation "sen[t] the matter before a court that had no jurisdiction
over the matter, . . . in turn cost[ing] the plaintiff time, legal
fees, and emotional stress that took place for over six months
before the General Sessions District 14 Court dismissed the
citation that Ms. Campbell had written in January 2019[,] reverting
. . . the appeal [that] was pending before the Shelby County
Circuit Court." (ECF No. 31 at 8.) However, Simpson was not
deprived of his right to appeal the first citation, as court
records show that he appealed the first citation to the Tennessee
Court of Appeals on November 7, 2019 – several months after the
first citation was dismissed and two months after filing this

lawsuit.[5] See Tennessee v. Michael Simpson, W2019-01981-COA-R3-CV (Tenn. Ct. App. filed Nov. 7, 2019). Further, Simpson successfully defended against the second citation, ultimately resulting in its dismissal.[6] It is axiomatic that "'the root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (emphasis in original) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)). For both citations, Simpson was afforded a constitutionally sufficient hearing process and, as a result, his procedural due process challenge fails as a matter of law.[7]

---

[5]Moreover, it has been deemed admitted by this court that "on or about November 7, 2019, [Simpson] appealed the Shelby County Circuit Court judgment against [him] to the Tennessee Court of Appeals." (ECF Nos. 25-1 at 2; 26.)

[6]While defendants state only that the Environmental Court dismissed the citation for lack of jurisdiction, Simpson's complaint states that he had "to appear before a court that had no jurisdiction over the matter for 6 months." (ECF No. 1 at 5.)

[7]Additionally, the defendants assert that Campbell is protected by qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In analyzing qualified immunity, a court must answer two questions: (1) whether a constitutional violation occurred, and (2) whether the contours of the constitutional right is sufficiently established that the government official would have understood that they were violating the right. Askew v. City of Memphis, No. 14-cv-02080-STA-tmp, 2016 WL 3461549, at *12 (W.D. Tenn. June 21, 2016). Because the court

4.  <u>Claims Against Code Enforcement</u>

Simpson also named the Shelby County, Tennessee, Office of Construction Code Enforcement – a division of the Memphis and Shelby County Office of Planning and Development – as a defendant in this case.[8] "A municipality cannot be held liable under § 1983 on a *respondeat superior* basis." <u>Mhoon v. Metro. Gov't of Nashville & Davidson Cty.</u>, No. 3:16-cv-01751, 2016 WL 6250379, at *6 (M.D. Tenn. Oct. 26, 2016) (citing <u>Thomas v. City of Chattanooga</u>, 398 F.3d 426, 432-33 (6th Cir. 2005)). Instead, municipal liability under § 1983 arises "'when execution of a government's policy or custom . . . inflicts the injury' of a constitutional violation." <u>David v. City of Bellevue</u>, 706 F. App'x 847, 850 (6th Cir. 2017) (quoting <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>Id.</u> (quoting <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011)). A plaintiff can establish such a "policy or custom" by

---

has found that no constitutional violation occurred, it follows that Simpson would not be able to overcome qualified immunity.

[8]The defendants argue that the real party in interest is Shelby County because the Office of Construction Code Enforcement is not a stand-alone entity capable of being sued. Because the outcome is the same regardless of whether Shelby County or Code Enforcement is the real party in interest, the court need not address whether to amend the pleadings to reflect that Shelby County should be the actual defendant.

demonstrating "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." Osberry v. Slusher, 750 F. App'x 385, 397 (6th Cir. 2018) (quoting Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013)).

Even construing all facts in the light most favorable to Simpson, the record does not support a finding that Simpson was harmed by a government "policy or custom." Not only does Simpson not point to a municipal policy or custom in any of his filings, but he also argues in his response that Code Enforcement is liable because Campbell was "acting under the official duty of the county [when she] conducted an illegal administrative search on 7198 Polder Drive" and that Campbell was acting "as a code enforcement officer" when she issued the second citation.[9] (ECF No. 31 at 4-7, 9.); see Mhoon, 2016 WL 6250379, at *6 ("[A] municipal entity . . . 'may only be sued under § 1983 for unconstitutional or illegal municipal policies, and not for unconstitutional conduct of [its] employees.'") (quoting Ctr. for Bio-Ethical Reform, Inc.

---

[9]Additionally, to the extent that his claims against Code Enforcement are based on the December 5, 2016, incident, the court has already found that they are barred by the relevant statute of limitations.

v. City of Springboro, 477 F.3d 807, 819 (6th Cir. 2007)). Because
Simpson has not presented any evidence of a custom or policy that
caused his harm, Simpson's § 1983 claims against Shelby County
must fail as a matter of law.

**C.   Motion to Amend**

Simpson filed a motion to amend his complaint to include
allegations that code enforcement inspectors entered onto his
property to take photographs without his consent and without a
warrant on January 30, 2017, January 8, 2019, July 17, 2019, and
July 19, 2019. (ECF No. 28 at 2-3.) Federal Rule of Civil Procedure
15(a)(2) directs courts to freely grant a party leave to amend its
pleading "when justice so requires." A court may deny the motion
to amend if such an amendment would be futile. Beydoun v. Sessions,
871 F.3d 459, 469 (6th Cir. 2017) (quoting Riverview Health Inst.
LLC v. Med. Mut. of Ohio, 601 F.3d 505, 520 (6th Cir. 2010)). "A
proposed amendment is futile if the amendment could not withstand
a Rule 12(b)(6) motion to dismiss." Id. (quoting Riverview Health,
601 F.3d at 520). The court has already found that the defendants
did not violate Simpson's Fourth Amendment rights by entering his
property to take photographs on December 5, 2016. This analysis
would apply equally to Simpson's allegations in the proposed
amended complaint that Campbell "entered onto the curtilage of the
home with the intent to take photographs of the plaintiff's
personal property located at the plaintiff's residence without

consent and without presentation of a warrant" on January 30, 2017, January 8, 2019, July 17, 2019, and July 19, 2019.[10] (ECF No. 28 at 2-3.) Additionally, Simpson's allegation in the proposed amended complaint that Campbell entered onto his property to take photographs on January 17, 2017, would be barred by the statute of limitations. See Howell, 655 F. App'x at 351. Thus, amending the complaint to assert that defendants entered onto his property to take photographs once more in 2017 and on three occasions in 2019 would be futile, and his motion to amend the complaint is DENIED.

### III.  CONCLUSION

For the reasons above, the defendants' Motion to Dismiss or in the Alternative for Summary Judgment is GRANTED and Simpson's Motion for Leave to Amend and Supplement Complaint is DENIED.

IT IS SO ORDERED.

/s/ Tu M. Pham
Tu M. Pham
Chief United States Magistrate Judge

March 9, 2021
Date

_____
[10]Simpson provided this description for each occurrence listed in the proposed amended complaint. (ECF No. 28 at 2-3.)